Merrimack, }
Feb. 4, 1902. }

### CARR & a., Ex'rs, v. St. Paul's Parish & a.

The jurisdiction of the court to advise in the administration of a trust is not ordinarily exercised unless the advice is necessary for the protection of the trustees.

Under a will providing that the income of the residue shall be expended for charitable and educational purposes, the executors are not authorized to take into their possession as trustees the estate incumbered with claims and apply the income thereof in liquidation of debts.

PETITION, for the construction of a will, and for advice and direction as to the disposition of a trust fund. Transferred from the October term, 1901, of the superior court by *Stone*, J.

The plaintiffs are the executors named in the will of John H. Pearson, under which they are also residuary legatees in trust. After provisions for the payment of debts and funeral charges by the executors and for sundry pecuniary legacies, the will provides in the seventh item as follows: "I give, bequeath, and devise all the rest, residue, and remainder of my estate of every description to the trustees hereinafter named [the plaintiffs] and their successors in trust forever."

The material provisions of the trust are: "(4) to pay to St. Paul's Parish, in said Concord, the sum of four hundred dollars

annually, in semi-annual payments of two hundred dollars each, at such stated times as my said trustees may determine.

" (7) To pay to the trustees of the academy at Andover, in said county, now known as Proctor Academy, the sum of two hundred dollars annually, so long as said academy shall continue in said Andover.

" (8) To *expend*, in their discretion, in such sums, at such times, and in such manner as may seem to them advisable, *the income* of my said estate remaining after the payment of all charges thereon created by and under this will, and all other legitimate charges against my said estate, for the benefit of the poor and destitute in said state of New Hampshire, and for charitable and educational purposes therein."

A codicil to the will is in part as follows: " I direct my trustees named in said will to hold intact whatever stock I may have at my decease in the Concord & Montreal Railroad corporation, so long as in their judgment it may be done without injury or prejudice to my estate; but it is not my intention to limit in any wise the authority conferred upon them in relation to my property under items nine and ten of my said will." Under the ninth item of the will the executors, and under the tenth item the trustees, are given power to sell and convey the estate or any part of it at public or private sale. The same codicil substitutes for a direction contained in the third paragraph of the seventh item of the will the following: " I give and bequeath to the Orphans' Home, a charitable institution located at Millville in said Concord, the income of one hundred and fifty shares of the Concord & Montreal Railroad stock above named, to be paid in equal sums semi-annually, at such stated times as my trustees may determine; . . . and in case my trustees sell or dispose of said Concord & Montreal Railroad stock under the provisions of this will and codicil, then said trustees shall pay over to said Home, as above provided, the income of the proceeds of the sale of said one hundred and fifty shares thereof."

The estate owes debts of a considerable amount incurred both before and since the testator's death. This indebtedness cannot be paid without a sale of a portion of the Concord & Montreal Railroad stock. The eleventh item of the will is: " In case at any time it may become necessary for my executors or trustees to procure a loan of money to protect the interests of said trust estate, I hereby fully empower them to do so."

The plaintiffs request the advice and direction of the court upon the following points:

1. At what date should the semi-annual payments to St. Paul's Parish and to the trustees of Proctor Academy begin?

2.   At what time should the payment of the income of the Concord & Montreal Railroad stock to the Orphans' Home begin?

3.   Have the executors or trustees, or both, the right to liquidate indebtedness existing at the date of Pearson's death, or subsequently created to settle claims against the estate, from the accruing income, if, in the judgment of the trustees, the best interests of the trust fund will be thereby subserved; or must the executors or trustees liquidate such indebtedness with the avails of a sale or sales of the property of the estate, even though such sale or sales would or might have to be made at a sacrifice, thus diminishing the amount of the trust fund?

*John S. H. Frink, Mitchell & Foster, Henry F. Hollis*, and *George W. Stone*, for the plaintiffs.

*Edwin G. Eastman*, attorney-general, entered an appearance.

*Joseph W. Fellows*, for Proctor Academy.

*Edward C. Niles*, for St. Paul's Parish and the Orphans' Home.

PARSONS, J.   The exercise of the jurisdiction of the court to advise in the administration of a trust is matter of discretion.   It is limited to questions of doubt or of conflicting claims where the advice is necessary for the protection of the trustees, who "are not required to incur risk in the management or distribution of the trust fund."   *Greeley* v. *Nashua*, 62 N. H. 167, 168; *Treadwell* v. *Cordis*, 5 Gray 341, 348; *Crosby* v. *Mason*, 32 Conn. 482.

The first two questions, as to the time when certain legacies are payable, are not matters of doubt or of conflict as to which the direction of the court can properly be required.   If there be any doubt as to when legacies generally are payable (*Stratton* v. *Stratton*, 68 N. H. 582, 587; *Doten* v. *Doten*, 66 N. H. 331, 332; *Tilton* v. *Society*, 60 N. H. 377, 384; *Rice* v. *Society*, 56 N. H. 191, 196; *Loring* v. *Woodward*, 41 N. H. 391, 393, 394), the plaintiffs do not need protection by the court in this case.   It does not appear that any legatee or the attorney-general makes any claim adverse to the view taken by the plaintiffs, or that all persons who are or could be interested are not entirely satisfied with the extent of their legal rights as laid down by the plaintiffs' counsel in argument.   In these circumstances, and in view of the broad discretion conferred upon the trustees in the distribution of the income of the fund for charitable and educational purposes, the question how

much the will expressly directs to be given to the church, the orphan asylum, or the school, is academic and of no practical importance.

The course which, if permissible, the plaintiffs desire to pursue upon the remaining question, as explained in argument, is to take into their possession as trustees the estate incumbered by claims existing at the death of the testator and since created, and by the diversion of a portion of the income from the purposes designated by the testator and its application to the charges existing against the estate thereby to augment the trust fund in their hands.

The reasons urged why this course should be adopted are that the estate not otherwise disposed of, aside from the Concord & Montreal stock, is not sufficient to meet all the legal charges existing against it, and that consequently to satisfy them, if now paid, some portion of that stock must be sold, whereas by the first codicil the trustees are directed to hold intact whatever stock in this railroad the testator had at his decease so long as in their judgment it might be done without injury or prejudice to the estate; and that, in the judgment of the trustees, by the course suggested the best interests of the fund will be subserved. Two propositions are conclusive against the authority of the plaintiffs to pursue the course proposed.

1. As executors, they are directed by the first clause of the will to pay the just debts of the estate and the funeral charges. This would be their duty if the will contained no such provision; for it is only out of the residue of the estate, after the satisfaction of the legal charges against it, that legacies can be taken. P. S., c. 189, s. 17. The trust fund created by the seventh clause of the will is of "all the rest, residue, and remainder of my estate" after the satisfaction of the prior provisions, which embrace as stated the payment of debts and sundry pecuniary legacies. As trustees, the plaintiffs hold only such of the estate as remains after the legal charges against it are paid. As trusteeś, they have no concern with the administration of the estate; their duty relates only to the trust fund — what remains and comes to their hands under the trust clause upon due administration. That the same persons are both executors of the estate and trustees of the residuary fund does not commingle the duties of the two positions, or confer upon them in either capacity greater authority than would be possessed if the respective positions were held by different persons. The distinction between the two capacities in which it was intended the plaintiffs should hold the estate is plainly recognized in the will. In item seven, paragraph one, the executors are directed to pay the annuity therein provided until the fund upon which it is charged comes to the hands of the trustees; and

by the ninth item the power of sale conferred upon the executors is less extensive than that given to the trustees by item ten.

2. Between an augmentation of the trust fund by the retention of a portion of the income and its investment, and its like enlargement by the application of the income to the payment of debts to meet which the capital is pledged, there is no distinction in law or fact. In either case the fund would be increased by the retention instead of the expenditure of the income, Such use of the income it has already been determined would be a violation of the imperative command to expend the income, which was said to be "plain and easily understood." *Haynes* v. *Carr*, 70 N. H. 463, 478, 479.

No new arguments have been advanced by the plaintiffs of sufficient weight to overturn the conclusion previously reached. The main ground upon which reliance is placed is, that in the direction to keep intact this stock it is described as "whatever stock I may have at my decease" in the railroad named. The testator may have been ill-advised as to the extent of the claims against his estate, and may not have foreseen all the expenses which would be necessarily incurred in its administration, and hence may have supposed that all of his stock in this railroad would naturally become part of the trust estate. However this may be, it is apparent that he was not certain this would be the case; for the direction is addressed to the plaintiffs in their capacity as trustees, and is expressly declared not to be intended to limit the power of sale conferred upon them as executors by the ninth clause of the will. While by the tenth clause the trustees are given power to sell and convey the estate, and to invest and reinvest the same, no power of reinvestment or of sale for that purpose is given the executors. The only occasion for a sale by the executors and for which authority is given would be to obtain the funds necessary for proper administration. The declaration that this power was not limited by the direction to the trustees to keep intact this railroad stock is evidence that the testator considered the possibility that a sale of it by the executors might become necessary in the due performance of their administrative duty. The direction relates only to such of the Concord & Montreal stock as actually becomes a part of the trust fund. The power to borrow money if necessary to protect the interests of the trust estate, given both to the executors and to the trustees, does not revoke the imperative command to expend the income, or lead to the conclusion that the testator intended his estate should not be settled according to law.

Nothing contained in the will authorizes the inference that it was intended the executors should delay the settlement of the estate for the augmentation of the trust fund. The absence of any

express provision that the estate should be held until all claims or charges could be paid from the income is evidence that the testator did not intend such delay. In the absence of such expressed intention, the law does not authorize such course. It is not claimed that a sale of so much of the estate as may be necessary cannot now be fairly made. The question of the duty of the executors to sell at a sacrifice, or of their authority to delay a sale for a reasonable time in the expectation of thereby obtaining the fair value of the property, is not presented and need not be considered until raised by the facts. *Gafney* v. *Kenison*, 64 N. H. 354, 357. Neither is the determination of this question material to the conclusion that the income of the trust fund cannot be applied to the extinguishment of the charges against the estate. The plaintiffs are therefore advised to administer the estate, settle their account as executors, and to proceed as trustees as heretofore directed. *Haynes* v. *Carr*, 70 N. H. 463, 484.

                                        *Case discharged.*

All concurred.