Cheshire,
June 21, 1938.

## KEENE *v.* UNION SCHOOL DISTRICT.

*Walker S. Kimball,* City Solicitor, for the plaintiff, filed no brief.

*Arthur Olson,* for the defendant, filed no brief.

ALLEN, C. J. The will gives the city a fund to be expended by it for certain educational purposes. In literal exactness, it provides for the city to take and administer the fund. But the city may not administer the fund. It is not within its corporate functions to furnish education. The administration of education belongs solely to the district. But the will manifests clearly that the charity shall serve the inhabitants of the city, and since the city and district coincide in land area, the fund is for the benefit of its inhabitants, to be enjoyed in subjects of higher education which the district may lawfully advance.

The city's right to seek instructions depends upon its right to serve as trustee of the fund, as a preliminary issue. If it is not legally qualified to hold the fund in that capacity, it is not entitled to be advised what the duties of a rightful trustee are in respect thereto.

The city's qualification to act as a trustee depends upon the purpose of the trust. By statute (P. L. *c.* 42, *s.* 18), applicable to cities as well as towns (P. L. *c.* 50, *s.* 2), towns may hold property in trust for certain specified purposes of "libraries, reading-rooms, parks, cemeteries, and burial lots," trees on highways and other public places, "and for any other public purpose that is not foreign to their institution or incompatible with the objects of their organization."

The language of the statute with reference to trusts which are "foreign" to a town's "institution or incompatible with the objects" of its "organization" is on its face ambiguous in respect to the purposes of the trust. Clearly if the purposes of the trust may be carried out by the town and the fund administered by it in the exercise of its proper powers and functions, the town may act as trustee of the fund. But if the purposes are outside the area of the town's field of proper action, the permission for it to hold the fund as its trustee is not clearly granted. In one sense any purpose for the welfare of the town's inhabitants is not oppositional to or inconsistent with, its "institution" or "organization." No conflict with its powers and duties is incurred or incited. But in another sense a purpose which may not be lawfully exercised by the town, not being within the required and permitted category of undertakings, is not within its institutional and organized character. In this sense, the subject of education is of alien concern and inconsistent with its proper governmental and corporate promotions. It is therefore necessary to construe the statute to ascertain whether a town may hold in trust a fund which it may not administer.

The earliest enactments for municipal trusteeships are of trusts for public libraries (Laws 1849, *c.* 861) and for cemetery purposes (Laws 1876, *c.* 34, *s.* 1). In 1891, as a material change of more comprehensive scope, the act (P. S., *c.* 40, *s.* 5) was passed which, with no change of language or form, is now in force by the 1926 revision.

In 1915, the 1891 act was in effect repealed by an act regulating municipal trust funds. (Laws 1915, *c.* 162). It specified in full detail the uses for which cities and towns might receive trust property, and included at least two trusts which the municipality might not

administer. One was for "schools and other educational purposes," and one was for "the building and support of hospitals." (*s.* 1). But this section of the act was repealed by its omission in the revision in 1926 of all the statutory law (P. L., Preface). By its express adoption thereof the revision renewed the legislation in force prior to 1915.

Antedating legislation on the subject of municipal authority to take and hold property in trust, it was held that without legislation some authority existed although its limits and qualifications have received no exact and precise definement. The existing legislation displaces the unwritten law upon the subject, but as the legislation in its terms of generality indicates in some measure an adoption of the unwritten law, the cases declaring that law have been examined.

In some review of them, it is said in *Trustees* v. *Peaslee,* 15 N. H. 317, 330, 331 (1844): "The weight of authority seems to be that corporations cannot be seized as trustees for purposes foreign to their institution. A corporation has no powers other than such as are specifically granted by the charter, or are necessary for the purpose of carrying into effect the powers expressly granted. . . . They cannot act as trustees in any matters in which they have no interest."

In *Chapin* v. *District,* 35 N. H. 445 (1857) a school district was held to be "a good trustee" of property to be used in the support of a school for the purpose of teaching the rudimentary subjects of education. In the opinion the language was used (454): "If, however, the trust be repugnant to or inconsistent with the proper purposes for which the corporation was created, that may furnish a ground why it may not be compelled to execute it. But that will be no reason to declare the trust itself void, if otherwise unexceptionable, but will simply require a new trustee to be substituted by the proper court, possessing equity jurisdiction, to enforce and perfect the objects of the trust." This case was incorrectly stated in *Lovell* v. *Charlestown,* 66 N. H. 584 as holding that a town might administer a fund given for its schools or education.

In *Sargent* v. *Cornish,* 54 N. H. 18, 22 (1873) the court held the view that while a municipal or other corporation might not take and execute a trust for objects "utterly *dehors* the purposes of the incorporation," yet its capacity was not "circumscribed by any other limitations than such as should exclude inconsistent, incompatible and improper objects." It might take "property upon a trust not

strictly within the scope of the direct purposes of the institution, but collateral to them."

In *Lovell* v. *Charlestown, supra*, decided in 1891, a town was held eligible to be a trustee of a fund to be administered "for the benefit of a worthy class of its inhabitants, though not strictly paupers."

In *Sargent* v. *Cornish, supra*, the trust was of a fund of which the income was to be invested in national flags to be used within the town "on all proper occasions." It was regarded as a trust for educational purposes. "And it may be questioned if the youth of the land do not derive more of instruction in the holy duty of patriotism and love of country from bonfires and illuminations and the display of the old flag of our Union, than from books on the science of government or political economy, or commentaries on the constitution." *Ib.*, 23. This philosophy, in substantial derogation of the value of universally approved and adopted means and methods of education, is too unacceptable to hold it in force as a common-law principle or as more than a personal view. However, the case stands as authority for the proposition that a town or city may be a trustee of an educational trust.

It thus appears that in the declaration of the unwritten law the same sweep of language found in the existing legislation is employed. Without more, it would be concluded that a town or city may properly hold property given in trust to maintain and advance education, by virtue of the statute now in force. But the effect of the 1915 act and its repeal also bear upon the issue of construction of the repealing statute.

The 1915 act also provided for the creation of boards of trustees to have the custody and administration of trust funds held by towns and cities, and the provisions in respect thereto have continued in force with some modifications. But the repeal of the 1915 act in its specific authority for towns and cities to hold property in trust for educational purposes, indicates a purpose to withdraw the authority. In effect, its adoption of the view taken in *Sargent* v. *Cornish, supra*, was cancelled. And the purpose of withdrawal is further disclosed in the provisions of the act, with its subsequent modification (P. L., c. 42, s. 23), by which the boards of trustees of town and city trust funds are to turn them, or their income, over to the town or city officials appointed to carry out the purposes of a trust, or are themselves to carry out the trust if no officials have been appointed. The directions to the trustees for paying over or expending a fund in their hands, or its income, clearly were intended to be complete and

adequate to cover all cases. The omission of provision for payment to others than the officials of the town implies that only trust funds which a town or city may administer as well as hold may be properly held by it.

The legislation was designed to take the place of the unwritten law upon the subject. The decisions declaring that law have been, not in construction of express legislation, but in determination of implied authority in the absence of such legislation. The enactment of express legislation superseded the implied authority. The similar language of the decisions setting forth the measure of the implied authority and of the express legislation is not controlling to require a similar meaning. The scheme and plan of the legislation now in force is to authorize a town or city to act as a trustee only when it is the beneficiary of the trust.

In further support of the conclusion, it is to be noted that the specific purposes set forth in the present statute are all such as pertain to the town's functions in their administration. As already appears, the purpose of education included in the 1915 statute was omitted in terms from the present law. It is a rule of construction that words of generality following specific ones are intended to be applicable only "to persons or things of the same general character or class with those specified" (*Narramore* v. *Clark*, 63 N. H. 166, 167), unless a broader construction "is clearly needed to give effect to the meaning of the legislature." (*State* v. *Company*, 86 N. H. 16, 25). There being no clear evidence to show that the legislative will would be disregarded if a town's trusteeship for educational purposes is held unpermitted, the *omnibus* words of the statute are to receive the test of the ordinary limitation of inclusion, and an exceptional case is not presented.

The school district is a distinct municipality. Its coincidence with the city in territory and inhabitants endows the city with no right to control and manage its property interests, whether they are legal or equitable. The city gains nothing for its own proper purposes in the trusteeship of the fund. It might as properly be a trustee of a fund for private purposes. If it may be a trustee of district funds, the district would, in reciprocal equality, be capacitated to act as trustee of city funds. The legislation does not contemplate that a municipality may hold in trust property for another one.

Accordingly, it is held that the purpose of the bequest is "foreign" to the city's "institution," and "incompatible with the objects of"

its "organization," for the reason the city is not authorized to administer a trust fund for educational purposes.

It follows that the city is not entitled to seek instructions how it may act as trustee. The equitable jurisdiction of the Superior Court vests it with authority, in duly instituted proceedings brought by the district, to order the city to render an account of its custody of the fund and to transfer the fund as thus ascertained to the district, as solely qualified to hold it as its trustee.

The proper officers of the district then in charge and custody of the fund may expend it or its income only as the district may properly require. If they are in doubt whether a demand for an expenditure in a certain manner is proper, they may petition the Superior Court to be advised and instructed. But neither they nor the district are entitled to be informed what possible uses of the fund are valid. It is only in respect to a vote of the district for an expenditure of the fund or some part of it for some purpose designated by the vote that judicial instructions may be obtained, to protect the trustee or custodian. *Greeley* v. *Nashua*, 62 N. H. 166; *Gafney* v. *Kenison*, 64 N. H. 354, 357; *Stevens* v. *Douglass*, 68 N. H. 209, 210; *Haynes* v. *Carr*, 70 N. H. 463, 484; *Carr* v. *Parish*, 71 N. H. 231, 233; *Gebhard* v. *Lenox Library*, 74 N. H. 416; *Flanders* v. *Parker*, 80 N. H. 566, 568; *Weed* v. *White*, 81 N. H. 197; *Adams* v. *Hospital*, 82 N. H. 260, 263; *Nashua Trust Co.* v. *Burke*, 84 N. H. 490; *Gale* v. *Gale* 85 N. H. 358; *Kelley* v. *Keniston*, 87 N. H. 43.

*Petition dismissed.*

All concurred.