Coös,
Dec. 5, 1916.

### PETER KING *v.* BERLIN MILLS COMPANY.

Employment in the manual construction of a pulp-wood carrier without the use of apparatus or any machinery propelled or operated by steam or other mechanical power, in a place over a mile from the employer's mill, the carrier to be wholly separate therefrom, is not work in a shop, mill or factory or work otherwise within the meaning of Laws 1911, *c.* 163, *s.* 1 (b).

PETITION IN EQUITY, brought by the plaintiff, under chapter 163, Laws of 1911, to recover compensation for injuries received while he was employed by the defendants in erecting a carrier for pulp-wood. Previous to the plaintiff's injuries, the defendants had accepted the provisions of the act.

The defendants own and operate several large mills at Berlin, in some of which they manufacture pulp stock. In such mills the defendants employ five or more persons in manual or mechanical labor, and operate machinery propelled by mechanical power.

The plaintiff was injured by a plank falling and striking him on the back while engaged with five or more fellow-servants in erecting between the side tracks of the Grand Trunk Railway and Dead river, a carrier, which, when completed, is to be used to convey pulp-wood from freight cars to the river to be floated down to the defendants' mill situated some two miles below on the Androscoggin river. The carrier, being more than a. mile from any of their shops, mills or factories, will be physically separate and distinct from any shop, mill, factory or other place of the defendants where they require the services of their employees. The carrier will consist of a large V-shaped trough, supported on wooden horses resting on foundations set in the earth. At the bottom of the trough will be an endless chain carried around drums.

or wheels at the ends of the carrier, and having blocks attached thereto at regular intervals, which will force the pulp-wood along the trough to the end, where it will fall into the river. When in operation, the chain will be propelled by mechanical power. At the time the plaintiff was injured, he was engaged with other servants of the defendants in erecting one of the wooden horses for the support of the trough. No part of the trough or chain had been placed in position, nor had any of the apparatus been then installed for propelling the chain. The question of the applicability of the act was reserved.

Transferred from the April term, 1916, of the superior court, by *Sawyer*, J.

*O. J. Coulombe*, for the plaintiff.

*Sullivan & Daley* and *Drew, Shurtleff, Morris & Oakes* (*Mr. Sullivan* orally), for the defendants.

PLUMMER, J.   The plaintiff contends that he is entitled to recover compensation for his injuries under the employers' liability and workmen's compensation act. (Laws 1911, *c.* 163.)   If so, it must be under section 1, sub-division (b), of said statute, which provides that the act shall apply to "work in any shop, mill, factory or other place on, in connection with or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical power in which shop, mill, factory or other place five or more persons are engaged in manual or mechanical labor." From the case it appears that the plaintiff was not engaged in work on, in connection with or in proximity to any hoisting apparatus; neither was there any machinery propelled or operated by steam or other mechanical power at the place where he was working.   He was employed with others in building a pulp-wood carrier, and at the time of the accident they were erecting one of the wooden horses for the support of the trough, but no part of the trough or chain that was to carry the pulp-wood, had been placed in position, nor had any of the apparatus been then installed for propelling the chain.

If the plaintiff had been engaged in working on or about a completed carrier propelled or operated by mechanical power when the accident occurred, there would be no question as to the applicability of the statute.   He would then have been working in a place, on, in connection with or in proximity to machinery propelled or oper-

ated by steam or other mechanical power. But as there was no apparatus or machinery installed or in operation at the time and place of the accident, it cannot be said that he was so employed. Therefore if the employment of erecting the carrier falls within the ambit of the statute, it must be held to be work in a shop, mill or factory. That is, the operation of the defendants' mills in which machinery is propelled by mechanical power must comprehend the work of erecting the carrier.

It was held in *Boody* v. *Company*, 77 N. H. 208, 210, that work in a mill included not only the mill buildings in which the business is conducted, but also everything appurtenant to them, such as the dam, flume, yards, and the ways provided for the use of employees, —the entire manufacturing plant. But under this construction of the statute labor performed in erecting a pulp-carrier for the defendants more than a mile from their mills would not constitute work in the defendants' mills. The place where the pulp-carrier was being erected was in no way appurtenant to the defendants' mills, and in no sense a part of their manufacturing plant. To hold that building a pulp-carrier for the defendants more than a mile from their mills is working in the mills within the meaning of the statute, would lead to results never contemplated by the legislature. Under such an interpretation of the statute those engaged for the defendants in felling trees, and hauling them from the forest many miles from their mills, could be said to be working in their mills. Indeed it is difficult to imagine any manual or mechanical labor that employees of a manufacturing concern could do that might not be construed as work in a shop, mill or factory.

The English workmen's compensation act of 1897 (60 & 61 Vict. *c.* 37) contained the following clause: "This act shall apply only to employment by the undertakers as herein-after defined, on or in or about a railway, factory, mine, quarry, or engineering work."

This provision is somewhat similar to that portion of our statute that is under discussion, although it is more comprehensive and elastic than our law in that the word "about" is used. The English courts in construing the above clause have held that employment at places separate and at some distance from factories, mines, quarries or engineering works was not work on or in or about them, but that the employment must be at a place contiguous or in close proximity to them, to bring it within the purview of the statute. *Fenn* v. *Miller*, [1900] 1 Q. B. 788; *Lowth* v. *Ibbotson*, [1899] 1 Q. B. 1003; *Turnbull* v. *Lambton Collieries Co.*, 82 L. T. (N. s.) 589; *Had-*

*dock* v. *Humphrey*, [1900] 1 Q. B. 609; *Spacey* v. *Dowlais Gas &*
*Coke Co.*, [1905] 2 K. B. 879; *Chambers* v. *Whitehaven Harbour*
*Comr's*, [1899] 2 Q. B. 132; *McKinnon* v. *Barclay, Curle & Co.*, 85
L. T. (N. S.) 286.

The plaintiff's case is not within the purpose and spirit of the
employers' liability and workmen's compensation statute.    He was
not employed at a place where there was any machinery, but was
engaged in manual labor at a place wholly separate and distinct
from the defendants' mills where machinery was in use, and at a
distance from them, and his employment was not such as to entitle
him to protection under the act.

*Judgment for the defendants.*

All concurred.