Hillsborough, }
June 6, 1922. }

### DANIEL P. MANNING, JR., *v.* MANCHESTER STREET RAILWAY.

Whether one is making "a viatic use of" a highway is generally a question of fact; but if the use made is in no way incident to a traveler's use of the highway and there is no purpose or intent to make such use there is no question of fact presented as to reasonable use.

A street-railway conductor who occupies its tracks, situated in a public street, for the sole purpose of stopping another car for his own business is not a highway traveler thereon.

A servant who voluntarily, without the direction or acquiescence of the master, engages in work he was not hired to perform, assumes the risk of injuries peculiar to such service. In such case the master is under no duty to anticipate the presence of the workman at a place outside the scope of his employment.

An employee of a street railway who seeks to recover for injuries received while exercising upon its track the rights of a highway traveler is required to show that degree of care which travelers thereon are bound to exercise and not merely the care of an expert operative of the railway.

An alleged ground of negligence not presented at the trial cannot be taken for the first time in the supreme court.

ACTION, to recover for personal injuries sustained February 14, 1919. Trial by jury before *Branch,* J., and verdict for the plaintiff. The evidence tended to prove that the plaintiff was in the defendant's employ as a car conductor; that shortly after 11 P.M. on the day of the accident his car, being in-bound, running westerly toward Manchester, stopped at the Pine street turnout on Valley street

to allow the easterly or out-bound car to pass it; that for the purpose of ascertaining whether his wife was on this car the plaintiff wished to have it stopped when it reached the turnout; that he asked his motorman to open the sign-box door which would illuminate the vestibule of the car and enable the motorman of the oncoming car to see the signal to stop which he requested his motorman to give. This was done, but no signal was given by the motorman of the car which was stopped. Having given these directions to the motorman of his car the plaintiff stepped off his car and stood on the track of the oncoming car, signaling for it to stop. This car had made a public stop at Pine street a short distance from the turnout and then started up, and the motorman failing to see either the plaintiff or his signals came on without stopping at the turnout and the injury resulted.

The only negligence relied upon was the failure of Kelley, the motorman of the east-bound car, to see the plaintiff and to stop his car. The declaration contained two counts, one under Laws 1911, *c.* 163, in which the right to recover was based upon negligence of the plaintiff's fellow-servant Kelley, the motorman of the east-bound car; and in the other, negligence of the defendant toward the plaintiff as a highway traveler was set up as the ground of recovery. A question controverted at the trial was whether at the time of the injury the plaintiff was acting within the scope of his employment, but this question was withdrawn from the consideration of the jury, who were instructed that if the plaintiff was not then within the scope of his employment as an employee, he was a pedestrian lawfully in a public street and the defendant owed him the same duty as if he were an employee engaged in the performance of his work. The jury were also instructed that if they found the plaintiff in fault, they might consider whether the motorman could by care have avoided the accident after the plaintiff could not by like care have escaped injury.

The defendant's motions for a nonsuit and directed verdict were denied subject to exception. The defendant requested the court to instruct the jury that the plaintiff was not injured by accident arising out of and in the course of his employment; that when injured he was not a traveler upon the highway; that the plaintiff cannot recover because he was injured by the negligence of a fellow-servant. The defendant excepted to the refusal to give these instructions, to the contrary instructions given and to the submission of the last-chance rule as a possible ground of recovery.

Transferred from the January term, 1921, of the superior court by *Branch*, J.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

PARSONS, C. J.   It is very clear that there has been a mistrial. As the case was submitted to the jury, the duty imposed upon the defendant was that of care, as a legal user of a highway for travel, toward other members of the public legally exercising the same right, while the custom of the defendant's employees in the stopping of the defendant's cars was submitted for consideration on the question of the plaintiff's care.   It is obvious that if the plaintiff claims the rights of a traveler he must submit to the burden of having his conduct measured by that of like travelers, and that conduct which might be considered free from negligence in the expert operative of a dangerous employment might be clearly careless in one who had not assumed the obligations of such an occupation.   This point is raised by one of the defendant's exceptions but need not be further elaborated because it is equally clear that the evidence does not sustain a verdict for the plaintiff upon any ground. The motion for a directed verdict should have been granted.   The plaintiff's evidence was addressed to the proposition that his injury was caused "by accident arising out of and in the course of the employment" (Laws 1911, *c.* 163, *ss.* 1, 2) in which he was engaged by the defendant.   When the case was submitted to the jury, this issue was rejected as immaterial and the jury were instructed that the plaintiff was at the time of the injury a pedestrian in a public street.   The defendant's exception raises the question whether this proposition is the legal result of the evidence; and the exception to the refusal to order a verdict, the question whether there is any evidence tending to establish the proposition as matter of fact. Whether one is making "a viatic use of the way" is generally a question of fact. *Lydston* v. *Company*, 75 N. H. 23, 24.   Being a question of fact, it is necessarily to be determined by the triers of fact, unless because of the absence of essential evidence or the presence of undisputed facts but one conclusion can be drawn. For example, if there is no evidence that the place occupied is a highway the party sustaining the burden of proof necessarily fails.

The question is one of use reasonably incident to highway travel.

*Varney* v. *Manchester*, 58 N. H. 430. But if the use made is in no way incident to a traveler's use of the highway and there is no purpose or intent to make such use, there is no question of fact presented as to reasonable use. The only evidence tending to show that the plaintiff when injured was a highway traveler is the fact that the road-bed of the defendant's railway was in a street in use by the public as a highway in the city of Manchester. Assuming that proof could be supplied as to the public's highway title in the street, the question is as to the plaintiff's use. In his testimony he makes no claim to a traveler's use of the street. He did not cross the track or leave the limits of the highway assigned the defendant for its tracks. He occupied that for the sole purpose of exercising his power as defendant's conductor in uniform of stopping the car which injured him. There was evidence that as defendant's conductor he could stop a car in this way and that if his signals had been observed the car would have been stopped. The fact that he was wrongfully exercising his authority so as to exclude him from recovery as the defendant's servant does not change his purpose or intent and make him what he did not understand he was, a highway traveler. Such use of this particular territory as he was making was understood by Manning to be incident to the defendant's rightful occupation thereof and not an incident of a traveler's use of the way. If his act was such as deprived him of the master's protection, the destruction of that relation did not create one more onerous for the defendant. His felonious attempt to burglarize the cash box on the car while *en route* — a violation of his duty to his employer destroying the relation of master and servant — would not have made him a passenger or have imposed upon the defendant toward him, an intending thief and burglar, the obligations of that relation. In such case, having forfeited his right as employee he would be wrongfully on the company's car, a trespasser at least. In this case, attempting to occupy the defendant's premises not as a highway traveler but as a railroad employee, his failure to establish that relation would leave him on the ground without right, a trespasser.

There was evidence that some employee of the company might occupy the position the plaintiff did and hence of a consequent obligation of the defendant to watch for such presence. Even if the plaintiff was not a highway traveler but a trespasser upon the defendant's tracks, the company might be guilty of negligence in failing to detect his presence if there was reason to expect it. *Brown* v.

*Railroad*, 73 N. H. 568, 573. But there was no evidence of any reason for anticipating the presence of any person other than an employee of the company, either highway traveler or trespasser, at the spot occupied by the plaintiff. He stood on the turnout opposite his own car on the main line which blocked the passage across the tracks at that point. No person could there cross the tracks, and an attempt to do so could not reasonably be anticipated. The oncoming car had within less than a hundred feet stopped for the delivery of passengers. Passengers were not received except at regular stopping places and then only on the right-hand side of the cars. There was no ground for expectation, therefore, that any intending passenger would be taking the stopped car from this side or would attempt to stop the other car by signaling from this position. There was no evidence of such an occurrence at any time. As the defendant was not bound to anticipate the presence of a trespasser or highway traveler at this point, it is not in fault for failing to discover the plaintiff, if he stands on either ground. *Shea* v. *Railroad*, 69 N. H. 361; *Ellsmore* v. *Director-General, ante*, 100.

But, as has been said, there was evidence that the presence of an employee at the place where the plaintiff was injured might be expected and the real question between the parties is whether the failure of Kelley, the defendant's motorman, to detect the plaintiff's presence, the only ground of negligence claimed, constitutes actionable negligence under the law of master and servant either at common law or under the statute. As the plaintiff apparently assented to the ruling of the court that this question was immaterial, a verdict for the defendant on the only issue which was submitted would have disposed of his right of action. *Chesley* v. *Dunklee*, 77 N. H. 263.

But the verdict the other way being found unsustainable, the plaintiff is fairly entitled to a consideration of the question whether there is anything for the jury upon which could be founded a breach of the master's duty toward him. At common law the fact that the negligence alleged is that of a fellow-servant would relieve the master, but if the negligence alleged had been something for which the master was liable outside of the fellow-servant's negligence, as for example that Kelley was an unskilled motorman whose lack of skill caused the accident and that the defendant was guilty of a want of care in employing him for that service, still upon the evidence there could be no recovery, for the plaintiff when injured was not engaged in furthering the master's business.

If it was within the line of a conductor's duty to stop a car in this way to transfer a passenger who desired to go in the opposite direction, no passenger on Manning's car desired to be transferred. Manning desired to stop the other car not in performance of any duty he owed to the company or to any of its passengers but solely for his personal end to ascertain whether his wife was on that car. In doing this he was doing something he was not employed to do, he was working not for the company but for himself. "A servant who voluntarily, without the direction or acquiescence of the master, engages in work he was not hired to perform, assumes the risk of injury . . . peculiar to such service." *Richardson* v. *Company*, 77 N. H. 187; *McGill* v. *Company*, 70 N. H. 125; *Parent* v. *Company*, 70 N. H. 199.

The statute upon which the plaintiff relies, while removing substantial defences open to the master at common law, the fellow-servant rule and assumption of risk (*Boody* v. *Company*, 77 N. H. 208, 209), did not otherwise enlarge the liability of the master. To recover, the servant must still show that the injury happened while he was doing what he was employed to do or, in the words of the statute, that he was injured "by accident arising out of and in the course of the employment." Laws 1911, *c.* 163, *s.* 2. If the accident *arose* out of his doing something he was not employed to do, it is obvious it did not arise out of his employment. Prior to the enactment of the statute, it was held that "A master's duty in respect to furnishing his servants a safe place in which to work extends to such parts of his premises only as he has prepared for their occupancy while doing his work, and to such other parts as he knows or ought to know they are accustomed to use while doing it." *Straw* v. *Company*, 76 N. H. 35, 37; *Morrison* v. *Company*, 70 N. H. 406, 408. While under the statute, for the plaintiff to recover it must appear that the defendant knew or ought to have known that the plaintiff might be at the place where he was injured. *Barber* v. *Company*, 79 N. H. 311, 314, 315.

The section of the statute under consideration relates to the liability of employers who do not accept the provisions of the act. The succeeding section (*s.* 3) provides for compensation by an employer who has accepted the act to employees who also accept it for "any injury arising out of and in the course of their employment." This expression appears to be taken from the English act and has been the subject of numerous decisions, determining whether the servant is entitled to the compensation provided in the act.

No such question has arisen here as yet, but elsewhere no construction has been given to the language which would extend the master's liability from what it would be at common law if negligence were shown. "An injury is received 'in the course of' the employment, when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *McNicol's Case*, 215 Mass. 497, 498. See L. R. A. 1916, A. *pp.* 40, 232. Although these decisions strictly relate to the use of the language in granting compensation under section 3, their principle has been adopted here in the construction of section 2, designed to compel employers to adopt the act. *Boody* v. *Company*, 77 N. H. 208; *Wheeler* v. *Contoocook Mills*, 77 N. H. 551; *Barber* v. *Company*, 79 N. H. 311. But nothing has been found here or elsewhere which authorizes such a construction of the phrase as would include within its terms an injury received while the servant was engaged in service he was not employed to perform, a service for himself, not reasonably incident to any service for his master.

As the defendant is not liable because Manning ought to have been seen by motorman Kelley, the question of the plaintiff's freedom from fault need not be considered, and there is no opportunity for the application of the rule which enables a plaintiff, in some respects negligent, to recover against a negligent defendant. If the defendant is not negligent, the plaintiff cannot recover even if his negligence as matter of law did not contribute to the injury. The last chance rule has no application.

In the plaintiff's brief it is claimed that it could be found from the evidence that Kelley did see Manning, though it is at the same time conceded that this issue was not submitted to the jury and nothing has been found in the record tending to show any such claim was made at the trial. Manning and his witness Connor testified that Manning stood on the track with the light from his vestibule and the headlight of Kelley's car shining upon him. Manning testified that there was nothing to prevent Kelley from seeing him if he had been looking. In fact, the burden of the plaintiff's case was that Kelley would have seen the plaintiff if he had looked.

There was evidence that Kelley and Manning were acquaintances, friends. The improbability that Kelley would drive his car directly upon his acquaintance and friend Manning tends to support the

claim that Manning was not seen, which might have been because Kelley was not looking, or because Manning was not standing where he says he was. If it were claimed that Kelley was in fact looking, the jury rather than believe Manning was knowingly run upon might conclude the failure to see him was due to the fact that he was not standing where he says he was. For this reason or some other the plaintiff placed his case on Kelley's negligence in failing to keep a proper lookout. The claim of negligence in running upon Manning with knowledge of his presence, not having been made at the trial, is not open here. *Gage* v. *Railroad*, 77 N. H. 289.

The exception to the denial of the motion for a directed verdict is sustained.

*Verdict set aside: verdict and judgment for the defendant.*

PLUMMER, J., was absent: the others concurred.