MAE E. DAVIS *v.* W. T. GRANT CO.

*McLane, Davis & Carleton (Mr. Davis* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Langdell* orally), for the defendant.

ALLEN, C. J. Stated in its essentials, the question is whether the workmen's compensation act applies to the ordinary employes of a store or mercantile establishment in which power driven machinery, including hoisting apparatus, is in incidental use in the conduct of its business and is in proximity to the employes' work. Although the act has been in force for twenty-five years, the question has not heretofore arisen here. And because of the differences in the scope and provisions of the legislation on the subject here and elsewhere, authority from other jurisdictions is scanty.

Specifically, the act is "only" for the benefit of "workmen engaged in manual or mechanical labor" in hazardous employment. P. L. c. 178, s. 1. Of the kinds of employment enumerated, one is "work in any shop, mill, factory, or other place" where hoisting apparatus or power driven machinery is used and at least five workmen are employed. *Ib., s.* 1 (II). It is the plaintiff's contention that she was a worker engaged partly at least in manual labor, that her work was in a place where an elevator, as hoisting apparatus, was in operation, and that the requisite number of fellow-servants was supplied. Relying upon the observance of the well settled rule of liberal construction in determining the range and bounds of the act, she says that she is within them.

Liberal construction of a statute does not call for a meaning beyond or outside the legislative intent. To extend legislation beyond its

intended field of operation is to amend it, as much as to narrow it within confines less than.the field. The policy and objectives of the legislation are to be recognized with comprehensive force, and it is a part of them that there shall be no application of the legislation beyond its terms and provisions construed in the light of the policy and objectives. There is no intention of an act that its policy shall be adopted in cases and situations which its terms fairly construed do not cover and include. The policy aids in determining the extent of application, but the extent being determined, it is not to be enlarged by literal 'construction of the terms beyond their usual meaning. A construction adopting a meaning of the terms possibly but not probably intended carries the policy farther.than was probably intended. Liberality of construction should effectuate, but not exceed, legislative intent. The main significance of the rule is the dismissal from consideration of the common-law jealousy of legislation disturbing its own policy, a jealousy leading to the formulation of rules of strict construction of legislation and in control and check of its operation. If the policy, spirit, and purpose of legislation are upheld in its construction, it is no denial of liberality of treatment to apply the rule that the language and phraseology of a statute are to be viewed in their ordinary and popular sense. "Reliance has been placed upon the beneficent purpose of the act. But, as often stated before (*Lybolt* v. *Company*, 85 N. H. 262, and cases cited), this attribute cannot alter the plain meaning of the language used." *Manock* v. *Company*, 86 N. H. 104, 107.

The compensation act is designed to benefit a special class of persons. " .... the legislature intended .... that one who is injured by accident while engaged in work in which the risks are great and difficult to avoid may be compensated .... regardless of the cause of his injury." *Boody* v. *Company*, 77 N. H. 208, 209. This objective is a standard to be employed in construing the doubtful language of the specifications in further definement of the class. It is of aid and guidance in stating the legislative meaning of language susceptible of more than one meaning. If the ordinary and usual meaning of the language meets the spirit and purpose of the act, a literal or special meaning is not to be found; but if the literal or special meaning is required to avoid a result not in conformity with the general intent, it will be adopted. One who may be classed within the application of the act only by giving the language its literal or a special meaning is not to be excluded if the general intent shows that he was to be included, but only if it so shows.

This no more than restates a principle of statutory construction long established. "The two rules of construction, that the object of a statute is to be regarded, and that the whole of it is to be taken together, are decisive of this case." *Barker* v. *Warren*, 46 N. H. 124, 125. "And when the meaning of the words used are doubtful, or they are susceptible of a double construction, that sense is to be adopted which best harmonizes with the context, and the apparent policy and objects of the legislature, *Pike* v. *Jenkins*, 12 N. H. Rep. 255." *Opinion of the Justices*, 45 N. H. 590, 591; *Upton* v. *Stoddard*, 47 N. H. 167, 172. "What is within the legally proved intention of the legislature is within the statute, though not within the letter; and what is within the letter but not within the intention is not within the statute." *Opinion of the Justices*, 66 N. H. 629, 655.

These methods and tests of construction are liberal. The general intent appearing and being followed, full scope of application is given play. To go farther and bring within the scope cases not within the intent, and brought in only by giving language a strained or technical meaning, would be a form of legislation. It is only when the terms of a statute which do not accord with the general intent are plainly expressed, that they prevail. *Woodbury's Appeal*, 78 N. H. 50, 51. While the compensation act is to be construed to effectuate its purposes, it is not to be given a meaning contrary to its terms (*Lizotte* v. *Company*, 78 N. H. 354, 357; *Lybolt* v. *Company*, 85 N. H. 262, 264), or not within its terms (*Manock* v. *Company*, 86 N. H. 104, 106; *Tully* v. *Carter*, 86 N. H. 301, 302), or outside its policy and purpose (*Brown* v. *Company*, 82 N. H. 78, 79).

The act being thus considered in the light of its broad purpose of providing for compensation for personal injuries in hazardous employments, it is clear that a salesman in a store is not a workman "engaged in manual or mechanical labor," within a fair application of the act. The wide contrast between the factory and the store in the employe's exposure to danger is to be regarded. The factory presents dangers of an extra-hazardous nature while the store has only those encountered in the ordinary paths and activities of life. The contrast receives practical recognition by a definition of workman in its customary and popular sense. Employes selling goods in a store are usually called clerks. Only in a literal sense are they workmen. The act has reference to "workmen engaged in manual or mechanical labor," thus emphasizing their calling as laborers, a term not in usage descriptive of salesmen in a store. If the salesman in a store performs some manual labor, he does not thereby become

a workman in the sense in which the word is customarily used. The labor being incidental to the employment of selling goods, it is not enough to signify that the employment is of a workman. "When we speak of a person doing manual labor, the mind is instantly directed to some kind of toil in which the physical predominates the mental." *Arizona &c. R. R. Co.* v. *Matthews,* 20 Ariz. 282, 289.

While all workmen in the service of others are employes, all employes are not to be classed as workmen. It is worthy of note that the act, referring to the employer as such, refers throughout its sections to the employe as a workman. It is plain that only a certain class of employes were meant to be within the application of the act. Not employment in general, but hazardous employment in which "the risks are great and difficult to avoid," is the stated sort of employment affected by the act. No other employments than those specially described are within its bounds.

If one having a clerical position or ordinarily termed a clerk may be within the act as a workman, his work must be at a place which is also within the act. The stress of the act is upon the danger of the work, the required character of which as manual or mechanical being a subsidiary limitation. Except to show proximity by occasion to use the elevator, it is of no bearing here, as a particular case, that the plaintiff's use of the elevator at certain times was safer than that of the stairway more frequently used. But it is of notice that elevators are not alive with danger as is running machinery, and their inclusion with machinery by the act indicates their dependence upon and relation to the place where they are operated.

The work is to be performed "in any shop, mill, factory or other place" where or near which the danger of hoisting apparatus or power driven machinery lies. If places of business such as stores and offices supplied with elevator service or some limited equipment operated by mechanical power had been intended to be included, it is probable that they would have been expressly mentioned. The words "or other place" may be argued to comprehend in sweeping fashion any and all places, but the special mention of shop, mill and factory would then naturally be omitted. To specify places allied to each other excludes places not mentioned and not allied to them, in the absence of excepting reasons.

The rule of statutory construction on this point is long and well established. It received statement in *Jones* v. *Gibson,* 1 N. H. 266, 272, as follows: "The words, 'other place' in the act in question,

following the words 'ship, vessel, dwelling house, and store building,' cannot mean other place in the most general and extensive sense of the words. In this general sense of the words, every material object must occupy such place. If the legislature had intended to prohibit searches for the purposes of making seizures in every case without a warrant, they would have said so in general terms without particularly mentioning places. The words 'other place' are evidently used in a restricted, and not in their most extensive sense. Other place, in this case means, other like place, that is place substantially the same with the places mentioned in connection with it, having in view, the motive and object which induced the legislature to prohibit an entry into those places without a warrant." In definite statement of the rule, "Where general words follow particular ones, they are to be construed as applicable to persons or things of the same general character or class with those specified." *Narramore* v. *Clark*, 63 N. H. 166, 167. For further reference the cases of *State* v. *Nadeau*, 81 N. H. 183, 189, and cases cited, and *Honnon* v. *Kerr*, 85 N. H. 386, 387, may be mentioned.

In the compensation act, what is meant by "other place" is a place where the kind of work is done that is done in a shop, mill, or factory, as a garage (*Plourde* v. *Auclair*, 86 N. H. 303), or a road construction project (*Manock* v. *Company*, 86 N. H. 104). It is said in *Morin* v. *Company*, 78 N. H. 567, 568, that an elevator operated either by hand or by mechanical power is to be classed with power driven machinery. And it is said in *Boody* v. *Company*, 77 N. H. 208, 212, that "any person . . . . who is engaged in manual or mechanical labor in any shop, mill, factory, or other place, by whatever name known," where power driven machinery is used and at least five persons are employed, is within the act. If by the phrase "by whatever name known" were meant any place whatever, it would follow in respect to location that a house furnished with a dumbwaiter, or any building equipped for convenience of occupancy with electrical or other appliances of a mechanical sort, or supplied with elevator service, or any place where an automobile is kept for use, would be a place of work to which the act applied, equally with shop, mill, or factory. No judicial extension of the act to such extremes would be justified, but the plaintiff's claim that an elevator in a store brings the store within the application of the act falls but little short of such an outcome. Any implications in *Boody* v. *Company, supra*, and in *Regnier* v. *Rand*, 79 N. H. 310, that the words "other place" in the act have no allied reference to shop, mill, or

factory are at most *dicta* and lack the authority of precedents. In the *Boody* case the place of injury was at a mill plant, properly a part of the mill within the statutory meaning (P. L., c. 178, s. 2), and in the *Regnier* case the workman was employed at a mill. In the *Morin* case there was a power driven machine in proximity to the work, besides the elevators, and the work was at a mill plant. To hold that "hoisting apparatus" includes all instrumentalities for lifting, such as jackscrews and pulleys, without consideration of the place of use, is to disregard the clearly expressed limitations of the scope of the act. Whatever may be within the definition of hoisting apparatus, it must be located in a place where the work is of manual or mechanical labor such as is performed in a shop, mill, or factory.

While "the rule" of *ejusdem generis* "is always subject to the qualification that general words are to be construed more broadly than the specific words where such construction is clearly needed to give effect to the meaning of the legislature" (*State* v. *Company*, 86 N. H. 16, 25), it would here develop and expand the legislation into unintended coverage if the character of the place of accident were immaterial in similarity with shop, mill, or factory. No liberality of construction invokes an unusual meaning of language required to transform an intended exclusion into an inclusion. The context of the act in limiting the class of employes, in providing for a minimum number, and in narrowing the nature of the employment, helps to show the restricted meaning of the general words. They denote a classified, and not a universal, generality.

A conforming view of the act was taken in *Tully* v. *Carter*, 86 N. H. 301, in respect to the provision relating to the "peculiar" danger of electric current. It was held to apply "only to those who in popular language would be spoken of as electricians or workers with electrical appliances."

It is suggested that the defendant's acceptance of the act and its insurance of liability have some bearing. The suggestion is illogical and specious. Only accepting employers are subject to the compensation features of the act (P. L., c. 178, s. 4), and the whole inquiry is whether, having accepted, they are liable in a case of accident. An employer not subject to the act but accepting its provisions gains no immunities. Not being subject to the act, he retains the common-law defences of assumption of risk and the fellow-servant rule, whether or not he accepts the act. It is not applicable unless its conditions are fulfilled. And the insurer cannot be liable if the employer is not, if only the employer's liability is insured. The discussion of

insurance in *Mulhall* v. *Company*, 80 N. H. 194, 205 *et seq.*, relates to prejudice from failure to file a claim seasonably and not to employments the act covers.

In summary, the innovation of workmen's compensation and employers' liability legislation in this state was not a destruction of the common law of master and servant. It only curtailed the range of operation of the common law by its superseding force. It proclaimed a new principle of industrial relationship, but with limited application. To be given unrestricted force according to its terms within that application, it was to be given no force beyond it. Unusual danger to the life and limb of the servant is the fundamental of the policy. "The evils of the common-law remedies, which were not noticeable in the days of small and scattered shops, few employees and simple tools, became intolerable in the days of crowded factories, equipped with complicated and dangerous machinery." *Mulhall* v. *Company*, 80 N. H. 194, 196. In declaring the meaning of the act in its definements and classifications, the inquiry is not so much how far the words may reach, but what the statutory objective to be reached is. "As in other cases where a broad distinction is admitted, it ultimately becomes necessary to draw a line, and the determination of the precise place of that line in nice cases always seems somewhat technical, but still the line must be drawn." *Holmes*, J., in *Ellis* v. *United States*, 206 U. S. 246, 260.

Since the plaintiff's injury is not compensable, the defendant's other exceptions become moot.

*Petition dismissed.*

BRANCH, J., did not sit: the others concurred.