Hillsborough, }
Jan. 5, 1937. }

CHARLES J. FOX, *by his father and next friend,*

*v.*

MANCHESTER.

*Sullivan & Sullivan* (*Mr. Thomas E. Dolan* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Franklin Hollis* orally), for the defendant.

MARBLE, J. Since in maintaining its streets a city is engaged in the performance of a governmental duty, it is not liable at common law to a highway laborer injured while in its employ. *O'Brien* v. *Derry,* 73 N. H. 198; *Gates* v. *Milan,* 76 N. H. 135. The workmen's compensation act (P. L., c. 178) presupposes the existence of the common-law incidents of master and servant in those employments within its scope. Consequently a city by accepting the provisions of the act does not make itself subject thereto except in respect to those duties which it performs in a private corporate capacity.

It is stated in the plaintiff's brief and was tacitly conceded by defendant's counsel in oral argument that the defence in the present case is being conducted by an insurance company. In answer to the presiding justice's inquiry at the trial, and also in answer to inquiries during oral argument in this court, counsel expressed the desire that, so far as the applicability of chapter 178 is concerned, the defendant be bound by the provisions of the act precisely as though the city were a private employer.

The question whether, on appropriate proceedings, the defendant could be enjoined from thus renouncing a legitimate defence or from spending public money "to insure against a non-existent liability"* is not here presented. The motion to dismiss the petition is limited to the grounds therein assigned. *Puchlopek* v. *Company,* 82 N. H. 440, 441.

The defendant apparently concedes that the plaintiff's work was in a "place" near power-driven "machinery," as required by the

---

*Borchard, "Recent Statutory Developments in Municipal Liability in Tort," 2 Legal Notes on Local Government, 89; 3 Current Legal Thought, 113, 121.

terms of the statute (see *Davis* v. *Company*, *ante*, 204), and the only reasons advanced in support of its motion are (1) that the plaintiff's injury did not occur in the course of his employment, (2) that the injury was not an accident within the meaning of the act, and (3) that the plaintiff has failed to show the necessary causal connection between his employment and his injury.

The plaintiff worked all night shoveling snow, and the temperature for the last six hours averaged nearly four degrees below zero. Late in the forenoon he discovered that his toes were frozen. He described their appearance as white and hard. He first applied a remedy procured from a drug store and then sent for a doctor. The doctor found that the left foot "was extremely frostbitten." He stated on cross-examination that the toes were black. A physician, called to the stand by the defendant, testified that if the plaintiff's toes were frostbitten that night he would not expect them to be black the next day but he "would expect possibly a bluish discoloration." This testimony was not controlling. A nonsuit is not ordered on evidence introduced by the defendant. *Giroux* v. *Insurance Co.*, 85 N. H. 355, 356, and cases cited.

Even though the plaintiff did not state that he suffered any pain that night and even though he did not realize that his foot was frozen until he looked at it in the morning, the fact remains that his toes were severely frostbitten when the doctor examined them that afternoon. The evidence clearly warrants the finding of the trial court that the plaintiff received the frostbite "during the night of January 26-27, 1935, and that it occurred while he was employed by the defendant on the Granite Street Bridge." It was "an accident within the statute." *Zwiercan* v. *Company*, 87 N. H. 196, 197, and cases cited.

The finding that the plaintiff was exposed to a greater danger than persons in general were exposed to that night is a reasonable inference from the evidence. He was required to stand on a bridge near a trap door opening directly into the river. The thermometer registered eleven above zero when he began work at the bridge at eleven o'clock; it registered four below zero when he finished work at eight the next morning. His station on the bridge exposed him to something "beyond the ordinary normal risk, which ordinary people run" and the "extra danger" to which he was thus exposed was "something arising out of his employment." *Andrew* v. *Society* [1904] 2 K. B. 32, 35. Furthermore "it could be found that he was exposed to a greater risk of freezing, because more constant, than the ordinary person engaged

in outdoor work." *Shute's* Case (Mass.), 195 N. E. Rep. 354, 356.
See Annotation, 13 A. L. R. 974. The case differs in these respects
from *Zwiercan* v. *Company, supra.*

Up to 1911, the year of the passage of our workmen's compensa-
tion act, "no statute upon this subject had been adopted in this
country, except the New York act of 1910. N. Y. Laws 1910, c.
674." *Guay* v. *Company,* 83 N. H. 392, 393. There is no provision
in our statute which definitely excludes from the benefits of the act
a workman whose employment is temporary, irregular, or occasional.
This is true also of the New York act of 1910, from which many pro-
visions of chapter 178 were derived. On the other hand, the English
act of 1897, as amended in 1906, expressly provides that the word
"workman," as there used, shall not include "a person whose em-
ployment is of a casual nature and who is employed otherwise than
for the purposes of the employer's trade or business." 6 Edw. VII,
c. 58, s. 13.

It has been said that in the absence of "any express provision, or
general limitation in the scope of its operation," a workmen's com-
pensation act "should be held to include employees whose engage-
ment is not usual and continued, but merely casual or intermittent."
28 R. C. L. 766. The English act of 1897, as originally drawn, was
construed to include daily laborers. 14 Chitty, English Statutes,
*p.* 942, note *q.* Thus the case of *Lysons* v. *Knowles,* [1901] A. C. 79,
holds that a collier employed by the day and working only two days
before being injured is entitled to compensation under the act.

Apparently defendant's counsel do not question this rule of con-
struction. They concede that if the plaintiff suffered a compensable
injury he is entitled to the payment of his doctor's bills under section
13 relating to remedial care, but in computing the amount due him
under sections 21 and 23 they contend that if there is any full-time
employment by which to measure his average weekly earnings it
must be found in his employment at the Manchester Country Club,
where he worked as caddy the summer before. The answer to this
contention is that the statute does not authorize consideration of the
earnings received from another employer. *Abbott* v. *Company,* 80
N. H. 301; *Freeman* v. *Mills,* 84 N. H. 383, 386.

The amount of compensation to which a workman was entitled
under the English act of 1897 depended on his "average weekly
earnings during the previous twelve months, if he has been so long
employed, but if not, then for any less period during which he has
been in the employment of the same employer." 60 & 61 Vict. *c.*

37, First Schedule, 1 (*b*).   In a case involving injury to a casual dock laborer "engaged for a day at a certain rate of wages per hour, but subject to discharge on an hour's notice" it is said: "Where there is no antecedent employment by the same employer from which average weekly earnings can be arrived at, the workman is still entitled to compensation though the word average in the schedule is not applicable."   The standard is the amount of wages that the employer "paid, or would have paid one week with another, to the injured workman while in his employment.   . . .   We cannot take into consideration employment under any other employer." *Bartlett* v. *Tutton*, [1902] 1 K. B. 72, 75.

By section 19 of our own act the amount of the workman's compensation depends on "the average weekly earnings of such workman when at work on full time during the preceding year during which he shall have been in the employ of the same employer, or, if he shall have been in the employment of the same employer for less than a year, . . . his average weekly earnings on full time for such less period." In the case of *Coté* v. *Company*, 85 N. H. 444, it was held that a factory employee working the entire time that his employer had work for him to do was entitled to compensation computed on the basis of the wages he would have received if the factory had been in operation at its full normal running time.

It follows as a logical extension of this rule that the basis of computation in the present case is the sum which the plaintiff, working at full time, at the rate of forty cents an hour, would have received from the defendant in the course of a week if the accident had not occurred.   See Boyd, Workmen's Compensation, *s.* 542.   The plaintiff was employed by the street commissioner as one of a crew engaged in necessary highway work.   The length of time required to perform this work is unimportant.   Full time in work of this kind comprises the normal number of working hours a week for day labor in the Manchester street department.   When, after the introduction of further evidence, full time as thus defined has been determined, the trial court can readily compute the exact amount of the award.

Chapter 88 of the Laws of 1933 relating to the employment of minors under eighteen years of age is inapplicable.   The alleged violation of P. L., *c.* 176, *s.* 16, prohibiting night work for more than eight hours, did not occur until after five o'clock on the morning of February 27.   The plaintiff completed his seventeenth year on that day, and the law usually disregards fractions of a day.   See *Monroe Loan Society* v. *Nute*, *ante*, 13.   "The law ordinarily" takes "no

cognizance of fractions of days, one becomes of full age the first moment of the day before his twenty-first anniversary." *United States* v. *Wright*, 197 Fed. 297, 298, and cases cited.

*Case discharged.*

WOODBURY, J., did not sit: PAGE, J., was absent: the others concurred.