Hillsborough,
July 2, 1947. } No. 3667.
Nov. 4, 1947.

MABEL M. NEWELL, *Adm'x v.* ARTHUR F. MOREAU.

**440**

*McLane, Davis & Carleton (Mr. Stanley M. Brown* orally), for the plaintiff.

*Sheehan, Phinney & Bass (Mr. Phinney* orally), for the defendant.

KENISON, J. As a preliminary matter, the findings of fact made by the Trial Court being supported by the evidence are accepted as true. We will consider the legal questions involved in the order in which they have been discussed in the defendant's brief.

It is argued that Newell's death was not "by accident" within the meaning of R. L., c. 216, s. 2. The trend of the recent cases regard assaults by design as accidental. From the point of view of the victim and in a popular sense (*Moore v. Company,* 88 N. H. 134, 138), Newell's death was sudden, unexpected and truly accidental. The majority of the cases, particularly those decided in the last three years, support this view. Horovitz, Modern Trends in Workmen's Compensation, 21 Ind. L. J. 473, 491-493 (1946); *Duncan v. Perry Packing Co.,* 162 Kan. 79; *Hagger v. Wortz Biscuit Co.,* 210 Ark. 318; *Kaiser v. Reardon Co.,* 355 Mo. 157; *Echols. v. Company,* 74 Ga. App. 18.

The next question is whether Newell's injury did not "arise out of" his employment as ruled by the Trial Court. "The statutory phrase 'arising out of and in the course of employment,' which appears in

most workmen's compensation laws, is deceptively simple and litigiously prolific." *Cardillo* v. *Liberty Mut. Ins. Co.*, 91 L. Ed. (U. S.) 743, 749. However, according to the great weight of modern authority, assaults are compensable if the assault arises out of a work matter and not out of a purely personal quarrel unrelated to the employment. Current Trends in Basic Principles of Workmen's Compensation, 12 Mass. L. Soc'y J. (May, Aug., 1947) Note 386. In this case it is clear that the ill feeling between Newell and Palmer occurred because of the work relations, while at work and as a result of the work done. *Hegler* v. *Company*, 224 N. C. 669, 671: "While the assault may have resulted from anger or revenge, still it was rooted in and grew out of the employment." For an adequate collection of cases and able discussion sustaining this proposition, see Horovitz, Assaults and Horseplay under Workmen's Compensation Laws, 41 Ill. L. R. 311 (1946).

The contention that the claimant's death did not occur "in the course of his employment" cannot be sustained in view of the liberal interpretation given to this phrase in our law. *Whitham* v. *Gellis*, 91 N. H. 226; *Bernier* v. *Mills*, 93 N. H. 165; *Maltais* v. *Assurance Society*, 93 N. H. 237, 240. While it is true that the assault in the *Maltais* case, *supra*, was sportive in nature, the reasoning of that decision is not so limited. An assault whether by design or in sport is in the course of employment where, as here, it was caused by or resulted from working conditions.

It is contended that Newell's death was caused in whole or part by violation of law or by serious and wilful misconduct. R. L., *c*. 216, *s*, 10, reads as follows: "Employee's Fault. The employer shall not be liable for any injury to the workman which is caused in whole or in part by the intoxication, violation of law, or serious or wilful misconduct of the workman." Although Newell committed no battery, the Court has found that he committed an assault. At most it was the misdemeanor of simple assault (R. L., *c*. 455, *s*. 22) and not the felony of aggravated assault. R. L., *c*. 455, *s*. 23. In determining whether the assault is serious or wilful within the meaning of the statute, we consider the misconduct and not the result. The misconduct must be grave and not trivial. Here, as in *Maltais* v. *Assurance Society*, *supra*, we hold that a simple assault or a battery is not serious or wilful misconduct within the meaning of the Workmen's Compensation Law.

In *Newell* v. *Insurance Co.*, *ante*, 26, it was decided that Newell's assault was a violation of law within the meaning of an exclusionary

clause in the policy. Of course that contract decision is not *res judicata* of this compensation case. There we were dealing with a private agreement between two parties; here we have a public statute embodying remedial legislation which has and will continue to receive a liberal interpretation to effectuate its purpose. No public policy was involved in the former case of contract but it is involved in the instant case of master and servant relationship. This was so even at common law, see *Richard* v. *Company*, 79 N. H. 380. "For it is not out of line with the common law to deal with causes where the relation of master and servant exists differently from causes where there is no such relation." Pound, "The Spirit of the Common Law" (1921) 30.

We need not now decide how serious a crime must be committed by the employee to preclude his widow and children receiving benefits under the workmen's compensation law. We do decide that the Legislature did not intend that any and every violation of the law was meant. It would come as a surprise to labor, industry and the Legislature to rule that every violation of law, including the technical and trivial, barred recovery.

Any such construction would bar an employee, on an authorized errand for his employer, from compensation if he were injured as a result of committing the statutory crime of expectoration. R. L., *c.* 165, *s.* 17. If a workman should receive the maximum fine of one dollar for the first offense of cursing (R. L., *c.* 448, *s.* 2) and should receive injuries in the course of his employment while causally violating this statute, his injury would not be compensable under such a construction. If these examples may be extreme, they serve to indicate that the Legislature did not intend to include all misdemeanors. We conclude under the circumstances of this case that Newell's technical and simple assault was not a violation of law under R. L., *c.* 216, *s.* 10.

Compensation was also denied because Newell was an "aggressor." There is much conflict in the decisions on this point (112 A. L. R. 1258, 1270) but the trend of the modern authority is to allow recovery. In order not to bludgeon the bar into insensibility by copious citations and prolix footnotes we refer to the discussion and collection of cases in the articles cited in the first part of the opinion. The defense of "aggressor" is not to be found in our statute or in other compensation laws. By the application of tort reasoning the defense has been judicially inserted in some compensation cases. We have already refused to read in a similar defense in sportive assaults (*Maltais* v.

*Assurance Society, supra*) and we see no reason for its judicial insertion in this assault. In reaching this result we have endeavored to follow the able reasoning of three leading cases in workmen's compensation law: *Cardozo,* J., in *Leonbruno* v. *Mills,* 229 N. Y. 470; *Rutledge,* J., in *Hartford &c. Co.* v. *Cardillo,* 112 F (2d) 11; and *Marble,* C. J., in *Maltais* v. *Assurance Society, supra.* Plaintiff is entitled to compensation in accordance with R. L., c. 216.

*Exceptions sustained.*

All concurred.

ON REHEARING. After the filing of the foregoing opinion, the defendant moved for a rehearing. Argument was invited on the application and construction of R. L., c. 216 s. 10.

*McLane, Davis & Carleton (Mr. Stanley M. Brown* orally), for the plaintiff.

*Sheehan, Phinney & Bass (Mr. Phinney* orally), for the defendant.

KENISON, J. The court is unanimous in its opinion that plaintiff's injury was caused "by accident arising out of and in the course of the employment" under R. L., c. 216, s. 2. We reconsider the question whether plaintiff's dependents are precluded from receiving death benefits under the exclusionary provisions of R. L., c. 216, s. 10 which bar compensation for injury caused in whole or in part by the plaintiff's "violation of law, or serious or wilful misconduct."

In ascertaining the meaning of any statute it is material to consider the circumstances under which the language is used, its legislative and judicial history and the objectives it seeks to attain. "New Hampshire was one of the first (1911) of the American states to adopt a valid workmen's compensation act. Some of its features are unmistakably moulded after the British act of 1906." *Mulhall* v. *Company,* 80 N. H. 194, 201 (discussing what are now sections 16— 19 of the act). In the first case construing section 1 of our act the court noted: "A somewhat similar provision of the English workmen's compensation act of 1897 (60-61 Vict., c. 37) is construed the same way." *Boody* v. *Company,* 77 N. H. 208, 212. The decision in *Moore* v. *Hoyt,* 80 N. H. 168, 171, involving section 12 of our act stated: "The same conclusion was reached in England, upon a some-

what similar statutory provision." It was the English act "upon which the New Hampshire statute was modelled." *Thomson* v. *Company*, 86 N. H. 436, 450. "The only precedent available when the act was passed in 1911 was the English statute" *Manock* v. *Company*, 86 N. H. 104, 107 (distinguishing our act which contained no provision for compensation to servants of an independent contractor). It thus appears that the parent English statute was the model for the Legislature and its judicial construction, at least prior to 1911, the guide for this court to the extent that the statutory provisions were the same or substantially similar. *Thomson* v. *Company, supra,* 438.

This court has made extensive use of the earlier English workmen's compensation cases in the original construction of our act. In addition to the cases already cited there are further examples: *King* v. *Company*, 78 N. H. 316, 318; *Manning* v. *Railway*, 80 N. H. 404, 409; *Fox* v. *Manchester*, 88 N. H. 355, 359, 361. Inasmuch as section 3 of the 1911 act (now section 10) had not been construed by this court prior to the revision of the Public Laws or the Revised Laws (P. L., c. 178; R. L., c. 216) and has not been amended since its original enactment, the earlier construction of the English statute becomes pertinent.

The English acts used the phrase "serious and wilful misconduct" as a bar to compensation. Section 10 of our statute used the same words in the disjunctive. Both statutes by their terms indicate that misconduct itself is not a bar to compensation. In the former it must be both serious and wilful while in the latter it may be either. Except for this distinction the words have the same meaning in both statutes. " 'Wilful' . . . imports that the misconduct was deliberate, not merely a thoughtless act on the spur of the moment. . . . 'Serious' . . . not that the actual consequences were serious, but that the misconduct itself was so." *Johnson* v. *Marshall, Sons & Co. Ltd.*, [1906] A. C. 409, 411, 412. In the former opinion it was decided that the misconduct must be grave and not trivial and that Newell's conduct was neither. It is believed that this view complies with the legislative mandate for statutory construction (R. L., c. 7, s. 2), and was so understood by the framers of the New Hampshire act. "The ordinary meaning of the word 'serious' in the English language is—grave. . . . as opposed to trifling and insignificant." Beven, Workmen's Compensation, 4th ed. (1909), 398.

Stated in over simplified terms the effect of defendant's argument is that plaintiff was hired to work and not to fight and that this was wilful misconduct precluding recovery under the statute. While this

argument has an appealing quality to it, it has not been followed in analagous cases and it proves too much. Employees are also hired to work and not to scuffle, commit batteries or engage in horseplay (*Maltais* v. *Company*, 93 N. H. 237), nor to depart from the work routine to make a personal purchase of tobacco (*Whitham* v. *Gellis*, 91 N. H. 226), nor to make other departures from the hired work. *Gallienne* v. *Company*, 88 N. H. 375. Yet, in all these cited cases compensation or recovery was allowed because it was such conduct of employees as could be reasonably expected and therefore was adjudged incidental to the employment. The inevitable result of associating men together in work is the same stress and strain that affect human mortals generally. Arguments, horseplay and some deviation from the planned schedule are bound to occur: they are compensable (and not necessarily considered wilful) when related to the work. That an assault may arise from an argument, is to be expected as much as that a battery will occur from horseplay. There is no logical reason for recovery in one case and denial in the other so long as the injury or death is the result of the employment as stated in *Guay* v. *Company*, 83 N. H. 392, 395, and followed in *Bernier* v. *Mills*, 93 N. H. 165, 167. In the words of the *Maltais* case, such conduct is " 'part and parcel of the working environment' . . . and therefore one of the perils of the service." (*p.* 241).

Arguments, altercations and assaults are as inevitable as they are undesirable. Where they arise out of the employment, they may be properly regarded as an employment hazard. Such actions are misconduct but are not serious misconduct unless of a grave and aggravated character. Such actions are not wilful misconduct unless deliberate or premeditated. Upon the facts in this case a work-induced, simple assault or battery by a small foreman in hot blood upon a large recalcitrant subordinate was part and parcel of the rough and ready working environment of a truck driver and his boss which is neither wilful nor serious misconduct under R. L., c. 216, s. 10.

"Violation of law" appears in section 10 after the word "intoxication" and before the phrase "or serious or wilful misconduct." Under a well established principle of statutory construction each of these three defenses to compensation must be construed with reference to each other. *State* v. *N. H. Gas & Electric Co.*, 86 N. H. 16, 25; *Davis* v. *Company*, 88 N. H. 204, 210; *Keene* v. *School District*, 89 N. H. 477, 481. A strict construction of "violation of law" would include any and every violation of law. Truck drivers exceeding the speed limit by one mile per hour would be deprived of compensation benefits if

injured during such periods. This is not reasonable nor is it the law. *Day* v. *Gold Star Dairy*, 307 Mich. 383. If a literal construction of a statute does violence to the apparent policy of the Legislature, it will be rejected. See, *Davis* v. *Company, supra*, where a literal meaning was not given to the word "workmen" and compensation denied in accordance with the object of the act as a whole. The Legislature used the phrase "violation of law" to include violations involving intoxication or misconduct that was either serious or wilful. Newell's actions were not such a violation of law.

We must constantly remember that in this case we are construing a compensation statute. "Since the employer may be in no way to blame or have anything to do with the injury, the liability to compensate for it is in no usual sense tortious in character." *Holland* v. *Company*, 83 N. H. 482, 484. We should not insert the conception of contributory fault which the compensation statute discarded and which is not a bar under section 10. *Maltais* case, *supra*, 242. We prefer a liberal construction of the statute consistent with its history and general policy rather than a strict and literal interpretation based on the tort law of master and servant.

*Former result affirmed.*

BLANDIN, J., dissented: the others concurred.
Nov. 4, 1947.

DUNCAN, J., *concurring:* Upon reconsideration, I have no hesitation in joining with the majority in reaffirmance of the view that the decedent's misconduct was not "wilful misconduct" within the meaning of the statute. R. L., c. 216, s. 10. Nor do I entertain doubts that not every causal violation of law was intended by the Legislature to be a bar. Rather it seems plain that only such violations as should descend to the level of "serious or wilful misconduct" were intended.

Whether the decedent's misconduct could be found to have been "serious" is a question not free from difficulty. Yet I am moved to concur in affirmance of the former result by the opinion that the evidence fails to warrant such a finding. There was misconduct, because there was a violation of law. As misconduct, it was censurable, but not therefore "serious." If the phrase "serious misconduct" be taken in its ordinary meaning, the record does not portray misconduct more "grave" or "aggravated" than what might be termed ordinary, or even expectable, misconduct. See, Horovitz, Assaults

and Horseplay, 41 Ill. Law Rev. 329, 337. Nor does it appear to me to fall within the class of misconduct described by Beven as that "which, if contemplated by a reasonably prudent man in the position *in all respects* of the wrong-doer would suggest as a probable consequence injury to life and limb" (Beven, Workmen's Compensation, 4th *ed.*, 401); or, to employ the somewhat comparable standard of the Connecticut decisions, to be open to classification as "misconduct which exposed the deceased to *serious injury*" (*Gonier* v. *Chase Companies, Inc.*, 97 Conn. 46, 55) and which he appreciated so exposed him at the time of the injury. *Mancini* v. *Scovill Mfg. Co.*, 98 Conn. 591, 597.

The decedent's misconduct did not proceed beyond a threat to use bare hands upon a contumacious subordinate. As a violation of law, it was not within the category of aggravated assaults, and was punishable at most as a misdemeanor by negligible fine, or imprisonment for a maximum of ninety days. R. L., *c.* 455, *s.* 22. Such misconduct is not reasonably to be classed as "serious" within the meaning of our compensation statute.

While the purport of the Trial Court's findings is far from clear in view of the use of the symbol "and/or" coupled with the disjunctive (see, *In re Bell*, 19 Cal., 2d, 488; *Cronin* v. *Crooks*, 143 N. Y. 352), it is plain that section 10 in some one of its aspects was deemed applicable. The former conclusion of this court that the decedent's misconduct cannot be found to come within the meaning of any of the phrases employed in that section appears to me to apply accepted conceptions, with as much accuracy as may be, in the circumstances. For the reasons indicated, I join in affirmance of the former result.

BLANDIN, J., *dissenting:* Careful reconsideration of this case on the defendant's motion for rehearing, at which new matter was brought to the attention of the court in the able briefs and arguments of counsel for both parties, convinces me that the Trial Court should be sustained and the plaintiff's petition dismissed.

No words could be plainer than those of the statute covering this case which reads as follows: "EMPLOYEE'S FAULT. The employer shall not be liable for any injury to the workman which is caused in whole or in part by the intoxication, violation of law, *or* serious *or* wilful misconduct of the workman." R. L., *c.* 216, *s.* 10. (Italics supplied).

So far as applicable to this case the statute says the workman shall

not recover if, first, his injury was caused in whole or in part by his violation of law. It is admitted in our previous opinion entered July 2, 1947, that his death was caused by his violation of law. Our earlier decision on another phase of this case rendered by an unanimous court holds to the same effect. *Newell* v. *Company, ante,* 26. Second, the statute says that the workman shall not recover if his injury was caused in whole or in part by his serious misconduct. That the plaintiff's death was the result of his serious misconduct cannot be reasonably denied. An assault voluntarily and deliberately engaged in "hot blood" to use our own words in *Newell* v. *Company, supra,* preceded by proddings and physical threats, ending in the most serious of all consequences; namely, death, can scarcely be deemed trivial. As the *Newell* opinion states, "the result, however unforeseen, was not disproportionate to the fight in which Newell engaged in hot blood." *Id.,* 29. Reasonable persons might well anticipate that a fight in which one party threatened the other as Newell did Palmer to "fix him once and for all" and where bad blood had existed for a long time would end as tragically as did this one. Newell should as a reasonable man unquestionably have anticipated probable injury to life or limb as a result of this fight. Plainly that was just what he intended. Third, the statute provides that the workman shall not recover if his injury was caused in whole or in part by his wilful misconduct. That it was so caused in this instance is obvious. The Trial Court has found that the plaintiff was the aggressor, the facts completely support this finding and our opinion of July 2, 1947 admits this to be so. To quote our own unanimous decision in *Newell* v. *Company supra,* 29, " 'what Newell did was done *knowingly, voluntarily* and *without error or mistake*' " (Italics supplied). His conduct in this case satisfies every definition of wilful misconduct. See 83 A. L. R. 1214; Webster's New International Dictionary, (2d *ed.*) *pp.* 1568, 2928.

The long history of vain attempts to enact the compensation law prior to its passage in 1911, together with the fact that the Senate refused to pass the bill with the wording "serious and wilful misconduct" but struck out "and" substituting "or" in place of "and," indicates their intent beyond question. If it may be assumed that our legislators were acquainted with the profundities and subtleties of the English texts and decisions upon which the plaintiff places reliance, and which are based on a statute using the word "and" instead of "or," assuredly they had no intention of following in their train. Admittedly our Legislature was loathe to pass the act *at all* and when they did *they intended to impose certain limitations upon*

*recovery.* They could have made a change at any time in the past thirty-five years. They did not do so. Only at the last (1947) session did they amend section 10 by substituting "and" for "or" in defining misconduct, striking out the words "violation of law" and qualifying the provision relating to intoxication. Laws 1947, *c.* 266. Until they passed this amendment in 1947 they intended the workman to be barred for either his causal violation of law or his serious *or* wilful misconduct *and they said so.*

Violation of law was not regarded lightly by our legislators. The history of the difficulties in passing the act, plus the fact that the Legislature could have inserted the word "serious" before "violation of law," and thus qualified it as they did misconduct indicates they had no intention of allowing a workman to recover when his own violation of law was causal. In any event to say that in 1911, when as even the plaintiff admits in his brief, intoxication alone was regarded as serious misconduct, the Legislature did not consider an assault ending in death such a violation of law as would be a bar to recovery appears to me to be outside the realm of sober contemplation. The Legislature intended all causal violations of law to bar recovery. The improbability of such violations as swearing, etc., cited as examples in the majority opinion being causal is obvious and the Legislature was justified in making no provision for them.

If, as the plaintiff claims the doctrine of *ejusdem generis* as applied to statutory construction has any application here it hurts rather than helps the plaintiff's cause. This doctrine is subject to the qualification that general words are to be construed more broadly than the specific words. *Davis* v. *Company*, 88 N. H. 204, 210. The phrase "violation of law" is obviously a catch-all here and should be construed more broadly than "intoxication" the only specific word which precedes it. In any event, if the plaintiff contends that violation of law refers to offenses on a par with intoxication, the offense here was unquestionably more serious than intoxication.

The case of *Maltais* v. *Assurance Society*, 93 N. H. 237, appears to furnish no real support to the result reached by the majority opinion. There the *victim* of *horse play*, not the *aggressor* in a *fight*, was allowed to recover. Furthermore the opinion in the *Maltais* case, *supra*, 242, is careful to point out that the claimant of compensation, referred to in the opinion as the decedent was, "not actively participating in the sport at the moment when the accident occurred, and the most that can be said in the plaintiff's favor on this issue is that the example set by the decedent may have prompted Cutting to do what he did."

Nor does the case of *Bernier* v. *Mills*, 93 N. H. 165, also cited in the majority opinion, aid the plaintiff. In that case the claimant of compensation was going on a legitimate errand from one part of the mill to the other and out of curiosity placed his hand on a machine and was injured. Obviously this case is in no way comparable to the one before us.

To reach the conclusion that the plaintiff should recover the majority opinion is forced to insert the word "serious" before the words "violation of law," though the Legislature did not see fit to do so. It says that a deliberate assault preceded by physical threats and proddings and resulting in the gravest consequence known to man; namely death, is not serious misconduct. It holds that this same intentional and deliberate assault is not even wilful. Granting that the act is to be liberally construed, yet the language of the statute is to be given its ordinary meaning and the beneficent purposes of the act are no excuse for altering "the plain meaning of the language used." *Manock* v. *Company*, 86 N. H. 104, 107. See also, *McIntire Enterprises* v. *Geiger*, *ante*, 368, and authorities cited. To give the language the "strained or technical meaning" necessary to reach the conclusion of the majority here is truly "a form of legislation." *Davis* v. *Company*, 88 N. H. 204, 207.

With due respect for the able and persuasive opinion of the majority it appears to me that three times in reaching its conclusion it holds that plain English does not mean what it says. It disregards the eminently sound and sensible findings and rulings of the Trial Justice, even holding that no reasonable man could find as the Trial Justice did, that the offense here was serious or wilful misconduct, and it strains to reconcile this opinion with our previous opinion in *Newell* v. *Company*, *supra*.

It substitutes uncertainty for reasonable certainty, in that while the bar may advise their clients to a limited extent as to what section 10 itself or as amended by Laws 1947, *c.* 266, *s.* 13, does not mean, it cannot give them any idea what it does mean.

In all fairness it seems to me this is not an issue between a liberal or strict interpretation of the statute, but between a reasonable interpretation of plain English and a case of equally plain judicial legislation.