ATTORNEY-GENERAL, *ex rel. Remick H. Laighton & a.*

*v.*

GERTRUDE CALDWELL.

*Stephen M. Wheeler*, Attorney-General, *pro se.*

*Louis E. Wyman* and *Stephen H. Simes* (*Mr. Simes* orally), for the relators.

*Hughes & Burns, Walter A. Calderwood* and *John F. Beamis,* for the defendant, filed no brief.

ALLEN, C. J.   By statute (Laws 1913, *c.* 412) the special charter legislation for the city of Portsmouth provides that any vacancy in the Board of Registrars "may be filled by the remaining members by their appointing" a voter in the ward entitled to a member by reason of the vacancy.

In 1895 (Laws 1895, *c.* 183, *s.* 20) the same provision was made

in a new charter for the city. In 1909 (Laws 1909, *c.* 241, *s.* 6) the authority was transferred to the city council, and remained there until it was restored to the Board of Registrars by the 1913 act above cited.

In 1878 (Laws 1878, *c.* 60, *s.* 11) it was provided that vacancies in the board of town supervisors of the check-list should be filled by the remaining members of the board. By later enactment (P. S., *c.* 32, *s.* 4) and since in force (P. L., *c.* 24, *s.* 4; R. L., *c.* 32, *s.* 4) if a vacancy were not filled by the supervisors seasonably or if the whole board should be vacant, the selectmen were to make the appointments.

By other legislation, for the election of other than city officers each ward of a city "shall be a town for the purpose of" elections. P. L., *c.* 50, *s.* 4; R. L., *c.* 62, *s.* 4.

Another statute (P. L., *c.* 50, *s.* 11; Rev. Laws, *c.* 62, *s.* 11) gives moderators, selectmen and clerks of city wards the powers and duties of those officers of towns in relation to "the warning of meetings, conducting elections, counting and declaring votes, recording the same, making returns of the votes received and certificates of elections, and all other matters relating to elections."

The defendant contends that while the Board of Registrars may fill a vacancy, yet in their failure seasonably to appoint, the general legislation above cited shall become operative and be applicable as supplementary. The relators' position is that the charter provisions above cited are exclusive, and that therefore the legislature has failed to provide for such a contingency as exists, due to the Board's unsuccessful undertaking to appoint.

The legislative policy of uniformity in elections between towns and cities, at least so far as relates to elections for other than town and city officials, is not questioned. Both cities and towns have boards of supervisors of elections, whatever their designation may be, and the only material difference between town and city boards is that the latter, usually apportioned among and chosen from the city wards, comprise a joint group with city-wide jurisdiction, thus in most of the cities giving a member authority outside his own ward, while town supervisors are chosen at large in their towns, and thus act only within their own voting district.

But as between towns and cities, while there is uniformity in the provisions for the election of town supervisors and for the filling of vacancies, those for the choice of city supervisors follow no one course and particularly this is true in regard to vacancies. While a

policy prevails for maintaining full membership of boards, the procedure prescribed therefor is determined by special legislation for each of the eleven cities of the State, as a part of their charter provisions rather than by general legislation on the subject. The result is that methods are not standardized and systematized, and the method in each city has mostly been adopted according to its needs or desires, with no undertaking to apply a common procedure for all and with no express reference for any application of the general legislation for towns.

Without excluding the possibility of amended special legislation having been made, charters or charter amendments have provided for vacancies in the board of supervisors to be filled, in Keene by the mayor and board of aldermen (Laws 1878, c. 162, s. 7), in Rochester by the city council (Laws 1891, c. 241, s. 7), in Laconia by the city council (Laws 1893, c. 241, s. 8), in Nashua by the board of aldermen (Laws 1913, c. 427, s. 30), in Manchester by the mayor with approval of the board of aldermen (Laws 1915, c. 327, s. 2, by implication), in Dover by the city council (Laws 1929, c. 329, s. 14), in Somersworth by the mayor and city council (Laws 1925, c. 324, s. 1), and in Franklin, Berlin and Concord the supervisors "for all purposes requiring such officers, shall be considered selectmen of said wards" of the city. (Laws 1893, c. 260, s. 8; Laws 1897, c. 121, s. 8; Laws 1909, c. 305, s. 2; respectively.)

Supervisors are local officers (*State* v. *Hadley*, 64 N. H. 473) and the general law that for the election of other officers each ward shall be a town for election purposes (P. L., c. 50, s. 4; Rev. Laws, c. 62, s. 4) has no bearing on the issue here considered, not even for election of city officials. Clearly, a difference in methods for filling vacancies depending on classification of the officials to be voted for at an election was never intended, nor does the statute (P. L., c. 50, s. 11; Rev. Laws, c. 62, s. 11) giving ward officers the powers and duties of corresponding town officers in the conduct of elections imply any authority of ward selectmen to fill vacancies in the board of supervisors. The statute enumerates the subjects of importance to secure the integrity of elections in cities as well as towns, and the omnibus phrase at the end includes none which are not to be classified with them. *Coté* v. *Company*, 86 N. H. 238, 244; *Davis* v. *Company*, 88 N. H. 204, 209, and cases cited. In view of the special and separate legislation for each city of the State prescribing how vacancies in their boards of supervisors shall be filled, no legislative purpose to give ward selectmen the appointing authority which town select-

men have in such respect is found. While in a sense the filling of a vacancy relates to elections, it is a matter only allied with them and does not, within the legislative enactment, relate to functions to be performed in the preparation, conduct and conclusion of an election. It follows that the charter legislation is exclusive, and unintended to be supplemented by that for towns. The argument for uniformity and to secure the filling of vacancies as effectively as possible may invite amendment of the legislation. But a policy declared or adopted is not always a policy acted upon, and unless acted upon, cannot defeat legislation inconsistent with it.

*Information granted.*

All concurred.